IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WELLPARTNER, INC.,

        Plaintiff,

   v.

DELEON PHARMACY, INC. and
RON GARZA,

        Defendants.

No. 3:15-cv-01577-HZ

OPINION & ORDER

Joel P. Leonard
Elliot, Ostrander & Preston, P.C.
Union Bank of California Tower
707 SW Washington Street, Suite 1500
Portland, OR 97205

      Attorney for Plaintiff

Jeff Pitzer
Pitzer Law
101 S.W. Main Street, Suite 805
Portland, OR 97204

      Attorney for Defendants

OPINION & ORDER - 1

HERNÁNDEZ, District Judge:

Plaintiff Wellpartner, Inc. is a pharmacy program administrator based in Oregon. Defendant DeLeon Pharmacy, Inc. is a dispensing pharmacy based in Texas, and Defendant Ron Garza is a Texas resident and principal of the DeLeon Pharmacy. The parties entered into a contract to have Plaintiff process and administer Defendants' pharmacy claims so that Defendants could participate in a federal drug replenishment program. According to Plaintiff, Defendants failed to pay $137,000 owed to Plaintiff under the contract.

Plaintiff brings claims for breach of contract and quantum meruit. Defendants move to dismiss for lack of personal jurisdiction. In the alternative, Defendants move to transfer the case to the United States District Court for the District of Southern Texas. Because Plaintiff fails to demonstrate that Defendants have sufficient minimum contacts with Oregon such that the Court may exercise specific jurisdiction over Defendants, Defendants' motion to dismiss is granted. The Court denies the alternative motion to transfer as moot.

## BACKGROUND

Defendant DeLeon Pharmacy ("the Pharmacy") is a pharmacy located in Corpus Christi, Texas. Garza Declaration ("Decl.") ¶ 1. The Pharmacy is owned by Jose DeLeon and a small group of his employees. DeLeon Decl. ¶ 1. Defendant Ron Garza is a part-owner of the Pharmacy and is responsible for running the day-to-day operations. Garza Decl. ¶ 1. Neither Mr. DeLeon nor Mr. Garza has ever been to Oregon. Id.; DeLeon Decl. ¶ 1. The Pharmacy is not authorized or licensed to transact business in Oregon and has no agent in Oregon for service of process. Id. at ¶ 2. The Pharmacy does not own or rent any real estate in Oregon, does not have Oregon-based facilities of any kind, does not have an Oregon bank account, and does not have any employees or sales agents located in Oregon. Id.

Plaintiff is a company that administers federal 340B drug replenishment programs. Lennard Decl. ¶ 2. According to Plaintiff, 340B drug programs were authorized by Congress in 1992 to provide drug cost savings to covered nonprofit hospitals and clinics who serve large numbers of low income and uninsured patients. Id. at ¶ 3. 340B program qualification is rigorous and strict compliance is demanded. Id. at ¶ 2. Plaintiff's network operations center is in Portland, Oregon. Id.

In 2013, a representative of Plaintiff met with Defendant Ron Garza in Texas to pitch the Pharmacy on hiring Plaintiff to administer the 340B program for the Pharmacy. Garza Decl. ¶ 2. On July 15, 2013, the parties entered into a Contract Pharmacy Services Agreement ("Agreement") for Plaintiff to provide program administration so that Defendants could participate in the 340B program as a covered pharmacy. Lennard Decl. ¶ 4; Ex. A. The parties signed the Agreement in the Pharmacy in Texas. Garza Decl. ¶ 3. The Agreement calls for the application of Arizona law. Id.

The Agreement provided that Plaintiff would review all drug prescriptions dispensed by the Pharmacy and qualify all eligible prescriptions under the 340B program. Lennard Decl. ¶ 5. To make that possible, Plaintiff was virtually connected to the Pharmacy's "Claim Switching Service." Id. at ¶ 5. This allowed Plaintiff to obtain, on a daily basis, all of the patient claim information that was generated by the Pharmacy. Id. Plaintiff processed the Pharmacy's claims on a continuing (normally daily) basis from October 2013 through April of 2015. Id. at ¶ 6. During this period, Plaintiff qualified 191 drug prescriptions for the Pharmacy under the 340B program, representing more than $150,000 of dispensed drugs. Id. All of Plaintiff's processing and qualification for the Pharmacy was done in Portland, Oregon. Id.

OPINION & ORDER - 3

Under the parties' Agreement, Plaintiff reported 340B program activity to the Pharmacy on a continuing basis through a web-portal which indicated the prescriptions that qualified, the revenues associated with those prescriptions, the fees earned by the Pharmacy, and the replenishment drugs that were ordered for the Pharmacy as a result. Id. at ¶ 7. Plaintiff also issued to the Pharmacy monthly summaries of the Pharmacy's 340B program activity. Id. All of Plaintiff's accounting and reporting was based upon data collected through the internet and was processed in Portland, Oregon. Id.

As required by the parties' Agreement, Plaintiff regularly placed orders for the replenishment of the 340B drugs dispensed by the Pharmacy and arranged for those orders to be paid. Id. at ¶ 8. Plaintiff ordered drugs from McKesson, a drug distributor in Texas that would deliver the drugs to the Pharmacy. Id. at ¶ 8, Garza Decl. ¶ 1. Defendants were obliged to pay to Plaintiff the 340B receipts they collected, less the fees earned by Defendants. Plaintiff generated invoices for the Pharmacy twice monthly. Lennard Decl. ¶ 9. Defendants made five[1] payments to Plaintiff under the Agreement, but failed to pay the remaining balance due of $137, 766. Id.

The Agreement had an indefinite end date. Lennard Decl. Ex. A, ¶ 4.1 ("This Agreement will become effective on the date of full execution and will continue until terminated as set forth herein."). On May of 2015, Plaintiff terminated the Agreement as a result of the Pharmacy's failure to pay money due. Lennard Decl. ¶ 11.

## STANDARDS

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss on the grounds that the court lacks personal jurisdiction. The plaintiff has the burden of making a prima facie showing of personal jurisdiction. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir.

---

[1] Ms. Lennard's declaration states that the Pharmacy made five payments to Plaintiff pursuant to the Agreement. Lennard Decl. ¶ 9. Mr. Garza's declaration states that six payments were sent. Garza Decl. ¶ 3. This factual discrepancy is inconsequential to the Court's analysis in this Opinion.

2008). Uncontroverted allegations in the plaintiff's complaint are taken as true, and any factual conflicts are resolved in the plaintiff's favor. Id.

Personal jurisdiction over an out-of-state defendant involves two questions: whether jurisdiction exists under the forum state's long-arm statute, and if so, whether asserting personal jurisdiction is consistent with the limitations of the Due Process Clause of the federal Constitution. Witt Co. v. RISO, Inc., 948 F. Supp. 2d 1227, 1248 (D. Or. 2013) (citing Pebble Beach Co v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006)). These inquiries essentially merge because Oregon's long-arm statute extends jurisdiction to the outer limits of due process. ORCP 4(L); Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (when state long-arm statute reaches as far as the Due Process Clause, the court need only analyze whether the exercise of jurisdiction complies with due process); Millennium Enters., Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 909 (D. Or. 1999) (because Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process, the analysis collapses into a single question and the court proceeds under federal due process standards).

The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72 (1985) (internal quotation marks and citation omitted). To satisfy this due process protection, the plaintiff must show that the defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.' " Boschetto, 539 F.3d at 1015–16 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

There are two forms of personal jurisdiction: general jurisdiction and specific jurisdiction. Id. at 1016. In this case, Plaintiff does not contend that Oregon has general jurisdiction over Defendants.[2] Therefore, the relevant analysis focuses on specific jurisdiction.

A court has specific jurisdiction where "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King, 471 U.S. at 472 (internal quotation marks and citations omitted). The Ninth Circuit uses a three-part test to determine if a party has sufficient minimum contacts to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting Schwarzenegger, 374 F.3d at 802).

The plaintiff bears the burden on the first two parts of the test. Id. (citation omitted). If the plaintiff succeeds, "the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." Id. at 1211–12 (quoting CollegeSource, 653 F.3d at 1076). If plaintiff fails to establish either of the first two parts, the jurisdictional inquiry ends and the case must be dismissed. Id. at 1213; see also Schwarzenegger, 374 F.3d at 802.

## DISCUSSION

I.   Specific Personal Jurisdiction

Defendants raise three arguments against the exercise of specific personal jurisdiction:

---

[2] See Pl.'s Memo. Opp. 4, fn. 1, ECF 14.

(1) at no point did the Pharmacy or Mr. Garza "purposefully avail" themselves of the privilege of conducting activities in Oregon or invoking the "benefits and protections" of Oregon law; (2) Plaintiff's claim against Defendants does not arise out of Defendants' activities conducted in Oregon; and (3) the exercise of jurisdiction over Defendants is not reasonable.

For claims sounding primarily in contract, the Ninth Circuit applies the "purposeful availment" analysis and asks whether a defendant has "purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 1212 (quoting Schwarzenegger, 374 F.3d at 802) (alterations omitted). The "[p]urposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988). "In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction or business with the forum state." Id.; see also Walden v. Fiore, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014) (noting that the relationship with the forum must arise out of contacts that the "defendant *himself*" creates with the forum) (quoting Burger King, 471 U.S. at 475) (emphasis in original).

Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," a court must evaluate four factors to determine whether the purposeful availment prong is met: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, (4) the parties' actual course of dealing. Burger King, 471 U.S. at 478–79, 105 S.Ct. 2174. "Parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other

State for the consequences of their activities." Id. at 473 (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)).

Plaintiff argues Defendants purposefully availed themselves of the privileges of conducting business within Oregon by engaging an Oregon company to perform substantial business activities for them in Oregon. Plaintiff contends that for eighteen months Plaintiff provided, on a daily basis, the review and administration of Defendants' 340B claims. Defendants' drug dispensing data was sent to Oregon so that Plaintiff could review it, identify which claims met 340B criteria, and determine which replenishment drugs needed to be ordered. In addition, Plaintiff summarized its work each month for Defendants and issued twice-monthly invoices to Defendants. According to Plaintiff, "[i]n contracting and participating in that work and obtaining those benefits, Defendants formed a substantial connection with this judicial district and subjected themselves to the personal jurisdiction of this Court." Pl.'s Memo. Opp. 6, ECF 14.

Neither party cites any cases that would be helpful to this Court in resolving this motion.[3] However, this Court's research found several that are instructive in performing the purposeful availment analysis. In McGlinchy v. Shell Chemical Co., 845 F.2d 802 (1988), the Ninth Circuit found no purposeful availment of California law where the plaintiff and defendant entered into a contract that was executed by the plaintiff in California and the majority of plaintiff's performance under the contract occurred in California. The Ninth Circuit explained that, although the contract was executed by plaintiff in California, it was negotiated in England. Id. at 816. Therefore, "'the substance of the relationship was formed' in England, [and] the formality of signing the contract in California cannot establish jurisdiction." Id. The Ninth Circuit further

---

[3] Plaintiff's lone citation to Boschetto v. Hansing as a case that "contrasts tellingly" with this case is clearly inapposite, as it involved the E-Bay sale of a single car. Pl.'s Memo. Opp. 6, ECF 14.

OPINION & ORDER - 8

explained that no authorized agents of the defendant "were alleged to have performed or executed any portion of the contract in California." Id. The Ninth Circuit also explained that "the contract makes no reference to California or to the United States, either as appellants' place of residence or as a forum for dispute settlement.'" Id. As to plaintiff's performance under the contract, the court noted that the plaintiff's allegations that it performed 90% of its activities in California and that it invited defendant to use its California facilities, "even if accurate, describes only unilateral activity." Id. Such unilateral activity was insufficient to confer personal jurisdiction over the defendant. Id.

More recently, in Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015), the Ninth Circuit ruled that California lacked personal jurisdiction over a resident of Michigan in a contract dispute. The plaintiff argued that the contract between himself and the defendant created a substantial connection between the defendant and California because the plaintiff fulfilled his obligations under the agreement by seeking out investors and buyers in California. Id. The Ninth Circuit rejected the plaintiff's argument, explaining that it "would mistakenly 'allow a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis.'" Id. at 1213 (quoting Walden, 134 S. Ct. at 1125). The Court went on to stress that "the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." Id.

In contrast, the Ninth Circuit found purposeful availment of California law in Roth v. Garcia Marquez, 942 F.2d 617, 619 (9th Cir. 1991). In Roth, as here, the parties negotiated and signed a contract outside of the forum state. As here, the Roth plaintiff actively pursued the defendants and the defendants had minimal physical presence in the forum.[4] Any initial "reaching beyond one state" was clearly attributable to the plaintiff. Id. The Ninth Circuit

---

[4] As discussed above, Defendants in this case have had no physical presence whatsoever in Oregon.

OPINION & ORDER - 9

explained that the mere fact that the defendants had communicated with the plaintiff through interstate mail, telephone or other communications did not qualify as purposeful activity invoking the benefits and protections of the forum state. Id. at 622 (citing Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985)). In other words, the "prior negotiations" factor weighed in favor of denying the existence of personal jurisdiction over the defendants.

Nevertheless, Roth found that jurisdiction was proper because of the future consequences of the contract. Id. The Ninth Circuit cited the seminal Burger King case which, in finding jurisdiction, emphasized that the Michigan franchisee defendant had entered into a relationship that envisioned "continuing and wide-reaching contacts" with Burger King in Florida (the forum state). The contract in Roth concerned the rights to producing a film, most of the work for which would have been performed in the forum state. Id. The Ninth Circuit explained: "Though the [film] shooting most likely would have taken place in Brazil, all of the editing, production work, and advertising would have occurred in California [the forum state]. This is not an instance where the contract was a one-shot deal that was merely negotiated and signed by one party in the forum; on the contrary, most of the future of the contract would have centered on the forum." Id. Furthermore, the checks that the plaintiff would have sent the defendant would have depended upon activities in the forum state. Id.

At first glance, Roth appears to dictate a finding for Plaintiff in this case; however, a closer examination renders Roth distinguishable. It is important to note that it was not dispositive in Roth that a significant portion of the performance of the contract would *occur* in the forum state. Rather, the Court was persuaded by the fact that the parties' performance of the contract was *directed at* businesses and residents of the forum state, and performance of the contract (the editing, production work, and advertising) would have promoted the transaction of business

within the forum state. See also Gray, 913 F.2d at 760 ("Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state."). As the Picot decision explains, the mere fact that a contract calls for the plaintiff to perform its contractual obligations in the forum state is not, by itself, enough to justify the exercise of specific jurisdiction over the out-of-state defendant.

Here, the parties' negotiations took place entirely in Texas. The Agreement provides that Arizona law (as opposed to Oregon law) will govern any contractual disputes. The Agreement provided that Plaintiff's work would be done in Oregon and it was, in fact, done in Oregon for eighteen months until Plaintiff terminated the Agreement. Under the parties' Agreement, Plaintiff reported 340B program activity to the Pharmacy in "real time" through a web-portal it created for the Pharmacy. Lennard Decl. ¶ 7. In other words, the Pharmacy could access data through this web portal in order to determine each prescription qualification, associated revenues, fees earned, and replenishment drugs ordered under the program. Id. Plaintiff also issued to the Pharmacy monthly summaries of the Pharmacy's 340B program activity. Id. In exchange, Defendants sent five checks to Plaintiff in Oregon to pay for Plaintiff's services. Garza Decl. at ¶ 3.

In sum, the contacts of Defendants with Oregon consisted of the ability to access a web portal that was created and maintained in Oregon, the receipt of monthly summaries of activity created in Oregon, and the sending of five payment checks to Oregon over an 18-month period. The Court finds it a stretch to say that Defendants' performance under the Agreement allowed for or promoted the transaction of business within Oregon. While Plaintiff certainly performed all of its obligations under the Agreement in Oregon, this is the kind of "unilateral activity" that

the Ninth Circuit has explained cannot form the basis for personal jurisdiction over Defendants. See McGlinchy, 845 F.2d at 816; Picot, 780 F.3d at 1212-13.

Nor do the two affidavits of Plaintiff's employees change this Court's analysis. Ahmad Harris, 340B Analyst at Wellpartner, Inc., declares that he provided help to the Pharmacy through approximately fifteen live telephone conversations, several conference calls, and numerous email exchanges. Harris Decl. ¶¶ 1, 3. In addition, he "prepared and delivered patient claims spreadsheets" to the Pharmacy and arranged for continuing web-portal training for the Pharmacy. Id. at ¶ 3. Similarly, JeanAnn Lennard, Vice President of Pharmacy for Wellpartner, declares that she had telephone conversations and email exchanges with Pharmacy representatives and made one trip to Texas in early 2015 to address the Pharmacy's concerns. Lennard Decl. ¶ 10. However, the Ninth Circuit has made clear that ordinary use of the mail, telephone, or other communications simply do not qualify as purposeful activity invoking the benefits and protections of the forum state. Roth, 942 F.2d at 622 (citing Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985).

Therefore, Plaintiff has failed to carry its burden to establish Defendants "purposefully availed" themselves of the privilege of conducting activities in Oregon. Given this outcome on the first prong of the specific jurisdiction analysis, the Court does not reach the second or third parts of the test. See Boschetto, 539 F.3d at 1016 ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.") (citation omitted).

II.     Alternative Motion to Transfer Venue

Because the facts of this case do not support a finding that this Court may exercise specific jurisdiction over Defendants, the Court does not need to reach a decision on the venue transfer matter. Defendants' motion to transfer venue is denied as moot.

## CONCLUSION

For the reasons stated, Defendants' motion to dismiss for lack of personal jurisdiction [9] is granted. Defendants' alternative motion to transfer venue is denied as moot.

IT IS SO ORDERED.

Dated this 24 day of November, 2015.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge